The next case on the call of the docket is agenda number one, two, three, nine, seven, five. People of the State of Illinois v. Severius v. Radford as case number nine. Mr. Darrell, would you proceed? Good morning, Your Honor. I'm Steve Darrell with the Office of State Appellate Defender for the defendant on Severius v. Radford. May it please the Court, I'd like to first note for the record that Mr. Severius and his parents have joined us today in court. Mr. Severius's conviction should be reversed for two reasons. First, he was found to have violated his right to a public trial, and second, the jury instruction there denied him his right to a fair trial. I'd like to start with the violation of his right to a public trial. In this case, prior to the start of bringing in a potential juror for jury selection on the first day of the trial, the trial judge looked down at the court room and observed that the court room was roughly divided between those who were there supporting Severius and those who were not supporting him. The court decided that the judge was going to limit the number of people, the numbers of folks who would be present to four people for the entirety of jury selection, only two of which would be supporters of Severius. The judge did so, the judge stated the reason for doing so was because there would be space concerns, because he wanted to bring the entire veneer into the court room at the same time. It's undisputed that the veneer in this case was 118 people. With four members of the public present, it's undisputed that the court would therefore stand at least for seeing for at least 122 people. Was the press, the media allowed to stay? The record is unclear on that point. The judge, of course, is required to make findings in support of a public trial violation, and a judge might not make findings in that regard. And notably, the state actually cites a press account and asks this court to take judicial notice of it. It's highly improper to bring that sort of evidence outside the record into this case. Certainly a newspaper article is not indisputable evidence of anything, and this court cannot take judicial notice of it. So, obviously the state knows that that's necessary because the record does not show that the media was present. What is a public trial? In other words, if there's any restrictions on the number of people on one side or the other, is it a violation of public trial? Essentially, it means an open proceeding. Now, there are limits on the openness of the proceeding, and those have been explained by the U.S. Supreme Court. There's a four-part test. Is the judge required to ask the parties how many spectators or how many people interested in your case are going to be present? Are they going to be present for the trial? A witness has been required to make findings establishing all of those steps before the judge and top members of the public can see the court. That could come into as one of those stops, and to the extent that it does, it would be something to jump into. But, essentially in this case, if we look at those four stops, there's no way they're satisfied in this case. And that's true even under if the state has asked the court to adopt a substantial reason test, it's exactly the same in all the stops except the first one. The interest, overriding interest, is replaced with substantial reason, so it's the same test. This closure was clearly broader than necessary. There's no question about that. If we look at in the morning of the first day, ten full Dutchman jurors were excused, so ten seats sat open. As soon as they got in after the afternoon recess, there's ten seats sitting open. A number of jurors were selected and excused the afternoon of that second day, so there are only 62 members of India left at that time. Does the record indicate whether anyone made a request that they be allowed, that more people be allowed into the courtroom at that point? That's the material, in terms of the trial condition. The judge is responsible for making the findings, and the judge, well, first of all, I should point out, the judge decided he was clearing the courtroom and told people to leave at the beginning of jury selection. He told people, this is for the entirety of jury selection, four people, two supportive parts. So who is going to be there? And he also let them know that the trial, the evidence portion of the trial, was going to begin at 1.30 the next day. So it was clear that they were not allowed to be there under the judge's order, so certainly there's not going to be anyone in the courtroom at that point that can say anything about it. Among the spectators whose rights were violated by the closure under the first amendment, their first amendment rights to be there, they were excluded from the game. They were cleared from the courtroom, told they had to be out. So the seats sat empty, a number of seats sat empty in the afternoon of the first day. On the second day, the judge reminded the parties, okay, remember it's only four people for jury selection, two supportive parties, and after reminding them of that, the judge brought in 35 potential jurors. So there were 83 seats sitting open at that point. There's no question that this closure was broader than necessary. It wasn't even supported by an interest that's significant enough to override the right to a public trial. Is your concern the record? Had the judge spoken in more detail about the security issues, the practical concerns about how many jurors there were in the building, et cetera, if the judge had had a more developed record, would you have the same kind of objections? Are we just talking about what kind of findings the judge made here? It appears that the judge could not have made the findings based on the record as it exists right now. Now, it is true that the U.S. Supreme Court has repeatedly said, including in Presley, that the failure to make the record alone constitutes a public trial violation because the public needs to know the reason for the closure. That's justified before the courtroom doors are slammed shut and they're told you can't be here. That's an important consideration. That's why the record has to be made. However, in this case, the judge actually reminded everyone of their behavior in the courtroom before he sent all of these people out of the courtroom. So we know that the judge did not have any specific concerns. The Presley court also specifically said that a generic concern of jury contamination is not enough to justify closing the courtroom. Because of the work, that's present in every single case. And every single case is going to be closed for that reason. There needs to be a specific reason for it. The record here does not show it. The state here has not argued it. And the judge reminded people of being there. So there's no more record to be made than saying you all are behaving well. And that's great. Why is the right to a public trial so important, counsel? It's important for many reasons, both with respect to the defendant and in terms of the justice system as a whole. In terms of protecting a defendant's right, in terms of affecting the fairness of the defendant's trial, you can think about the fact that the Washington Supreme Court said it's important that members of the veneer see interested parties. Interested parties see members of the veneer. Because the members of the public who are there could potentially be looking to see if a person gives them a certain look that might indicate that this person is going to be prejudiced. They might recognize this person and know that this is a person who is going to be prejudiced against my client because I happen to know this person. Conversely, members of the veneer could look out and see interested people and say, okay, I know that person. That's going to affect my ability to be fair. I should point out to the judge, I know that person. And then we can determine whether that affects my ability to be fair in this case. So the Washington Supreme Court says that's an important thing for defendants. Why is it important for the press to be present? It is certainly important for the press to be present because open proceedings are basically the foundation of a free society. The right to public trial is essential to freedom and democracy and transparency. These things are simply fundamental aspects of our justice system. And when you close the door on the courtroom and block out the press or other people, you're also creating a problem with the public appearance of them for pride. The justice system relies on public confidence in the system. And when the courtroom doors are closed on people without a justification, grounded in the record, that derails public confidence in the system. So certainly if this is obviously a case with a great deal of interest in the community, certainly if a huge number of people came and there were just no seats and the fire marshal was concerned about how many people were in the room, certainly would you agree that the judge could make some kind of findings as to how that would be managed? Absolutely. So what should the judge have done here? So the judge could have done a few things. I mean, one thing that the U.S. Supreme Court said is mandatory in Presley. Presley was a case where the judge decided to bring an entire veneer and fill the seats in the courtroom with just members of the veneer. And I excluded a member of the public. And so the whole of the court in that case was that courts must consider reasonable alternatives regardless of whether any parties suggest them. And what the court specifically said, it is a reasonable alternative to divide the veneer down. So under the final U.S. Supreme Court precedent, that has to be done. There's no way around it. The entire veneer cannot stay in the courtroom for the entirety of jury selection. It just can't happen. Is that a rule that's set out in Presley, that there must be a divided veneer? Or is that the case where there was an objection made and the court rejected it? That's irrelevant because we're looking at it. We have two things to look at in the folks' plenary inquiry, whether there's clear error and whether it constitutes second-party plenary error because it affects the parents' defense files and the integrity of the judicial process. There is no objection requirement anywhere in there. In fact, the express terms of the plenary rule say that a reviewing court is allowed to use issues that were not raised at all in the trial court. So whether or not there's an objection is just irrelevant under our plenary analysis. And, of course, it's particularly the importance of it is greatly reduced when we're talking about a public trial violation because the judge has to make the proper findings to justify closure, regardless of whether the defendant objects. Do we initially have to make a finding that, in fact, this was not an open trial, that it was closed even though four members of the public were allowed, before we get to the rest of what the trial court should have done? There's no dispute here that it was closed when the judge So we have to find that leaving four members of the public, the courtroom is closed? Yes. Do we have to set a number if there were 10? Is the courtroom closed? If the courtroom seats only 20 and 40 people want to come in and the judge says nothing but the seats are filled, is the courtroom closed? I believe Justice Tyler's question was trying to get to a similar point there. The question is, what would be reasonable for a court to do? If the court has to apply this overriding interest test, and Justice Tyler's mentioning, well, there's obviously a point where space concerns, it would be a prior hazard to have people present. The judge does not need to go that far. I mean, dividing the video panel could mean dividing it into three groups. In this case, it would be about three groups of 40. One would come back in the afternoon. One would come back in the morning of the second day. And you've got 40, 40, 40. And now you've got more than half the courtroom available. I mean, I think it would be appropriate to say that public attendance would take up half the seats in the courtroom. But, again, if we were to say that four people means the courtroom is not closed, and, again, that's not disputed at all in this case. The State of Christchurch is a partial closure. It's still a closure. But if that's what we say, then what that means is your right to a public trial is your right to have four people present. That's it. There's no more to the right to a public trial. And that kind of makes a mockery of what a public trial is. It's not an open proceeding if only four people are allowed to be there. It would be laughable to think that a defendant, so you think about a defendant who comes to court, he's got family members there, he's got friends and supporters, people who care about him there. And the judge tells him, and the State of Christchurch is actually all part of the closures, are essentially, there's no problem with that. So it would just be one group in those situations. But if you're someone who shows up for jury selection, because you care about this defendant, in this case, you probably believe that a defendant is missing because of expert testimony showing that he's missing. And you want to go there for a reason. You're taking time out of your busy day, and you show up there. You want to see if this process is fair. You want to see if there's some prejudice on that jury that could potentially guide that jury during jury selection. And if the judge says, oh, you know what, I understand you have a right to a public trial, but that means you have one person. That's it, sir. That's not a public trial. That's a closed proceeding. One person present is a closed proceeding. If there's anybody that can't attend, that's interested, does that mean it's closed? Yes, but it doesn't mean that it's unjustified. Because there is a test. The overriding interest test is actually quite flexible. It's based, if you're packing the court to the point that fire marshal says you can't have any more people in here, that is an overriding interest. That overrides the right to a public trial. All we're saying here is that there are all these seats sitting up. There's the option of dividing the veneer panel. There are things that could have been done. You don't need to pack the courtroom beyond capacity. You can reserve half the courtroom for members of the public and let in more than just four people. So there is a point where space becomes an overriding interest, but a judge cannot make space a problem by bringing in the entire veneer panel, which is what the president says, without a really good reason for it. And as the court of evidence pointed out, bringing the entire veneer panel at once is a matter of the judge's preference or convenience. That's not a sufficient reason to override the right to a public trial. So the key is applying this test. It's a flexible test. It allows people to be excluded under many circumstances, but all the elements have to be met. You have to have an interest that's important enough, and the closure has to be narrowly tailored. Now, what that entails could be different in different situations, depending on the circumstances. Under the circumstances here, it's very clear that four people for the whole jury selection, that's not a narrowly tailored closure. It doesn't meet any of the steps. And just so to bring in the veneer, and I think it would be important to ask the state in this case, so why are 82 seats sitting out? How is that a narrowly tailored closure? If the state isn't going to say it's justified, it's got to have a reason for it. It's offered no reason whatsoever that 82 seats would sit empty on the second day. May I ask you the standard? You say that there are factors the court must consider, and here the court, at least in terms of the record he made, did not narrowly tailor them. That's not quite the right word I want to say, but choose to draft this order in a certain way. So, and you say it's flexible. So what are we looking at? Well, what is the standard here? Certainly is it abuse of discretion? Is it denial of fundamental fairness? What is the standard we're supposed to be using here? I believe that was something that was addressed in the briefs. Sorry, Paul. Yes. Well, in terms of the standard for determining whether an individual's constitutional rights have been violated, I believe it's a no. But I don't think that means that the judge has no discretion, because I think there are things that could be done. For example, one judge might choose to say, okay, let's just build a jury box with potential jurors, and let's have the rest of the public occupy the rest of the seats in the courtroom. That's reasonable. There's no way that that would ever be a problem. That's always okay. And indeed, when the court was actually requesting potential jurors, and the parties were requesting potential jurors in this case, he brought them to the jury box and did it, and that was a 14. The rest of the people, the media were just sitting there. It also could potentially be reasonable to say, okay, let's have half the courtroom reserved for the public, and we're going to divide the media panel into three portions. I mean, I think as long as you're dividing the media panel to make it smaller, as the U.S. Supreme Court requires in Preston, I think there is some room for a judge to exercise discretion. But ultimately, the question of whether constitutional rights are a problem, I think, is to no avail. One additional thing I wanted to go back to, as far as Justice DeVille's question before about the importance of the right to a public trial, I think we have to think about, again, if a defendant or a family member or someone supporting a defendant cares about a defendant, when that person is on trial facing lifelong potential consequences, they show up for jury selection because they want to be there. They are not allowed to be there. That hurts the entire judicial process. The people who are not allowed to observe the jury selection proceedings, now that's if they weren't given a reason. Oh, I'm sorry. I see my time has run out. Is there no additional questions at this point? I just wanted to ask that this court reverse as far as the conviction, both the public trial violation and the violation of jury instruction there, and to review this case for the state to decide whether or not to retrial as a result of the combination of these facts. Thank you. Thank you, Mr. Bureau. Mr. Gorsuch. Good morning, Your Honors. May it please the Court, Counsel, and Assistant Attorney General Gopi Kashyap on behalf of the people of the state of Illinois. I'd like to start, Your Honors, with the fact that the defendant has objected to his public trial claim altogether. He lodged no objection in the trial court when the trial court said that it would be partially closing the courtroom. He didn't lodge an objection on the second day when the court, again, said that it would be partially closing the courtroom. And then he, again, did not lodge an objection in his post-trial motion. So this Court's review is for plain error, but the lack of objection is important here because it directly contributes to the record that is before the Court. And the record that is before the Court, Your Honors, I do need to clear up. It's very difficult to piece together this record because of the way the jury selection went. In piecing together the record, I took a look at, in reviewing for argument, I went back and I looked at, again, and counted the veneer persons and who was struck and who wasn't. And I had said in our brief that there were 118 potential jurors. That is actually incorrect. There were more than 118 potential jurors. What I missed was that on the first day, the judge brought in at least 56 potential jurors, and he had divided the panel into two days. So on the second day, there was an entirely separate panel of 62 jurors. And so there were more than 56 jurors on the first day. Forty-six had been struck, ten had been selected, and there were more left at the end of the day. And on the second day, there were 62 more jurors brought in. So it appears that the judge did divide the 118-plus jury panel into two days. And so that is a correction I'd like to make. When I reviewed the case, I noticed the errors. But ultimately, the record shows that there was a very large jury pool. And I want to clear up things on what we do know from the record and what we don't know from the record, because I think it touches on a lot of the judges' questions. We know that there was a larger than usual veneer necessary. A defendant doesn't dispute that, and we know that there were reasons for that, especially scheduling, the nature of the crime, and the number of witnesses. We don't know how many spectators were actually in the courtroom before the veneer was brought up or how much space they occupied or what the courtroom space limitations were. That distinguishes this case from Presley in addition to the fact that there was an objection in Presley. We do know that there were approximately 20 potential witnesses who had been subpoenaed who were in the courtroom on that first day of trial before the veneer was called in. We also know that the court issued its order partially closing the courtroom before the veneer was brought up, so the veneer was unaware that the judge had decided to exclude any spectators. And we also know that the veneer saw spectators there because there were four people present. And the record before the court doesn't show that the media was excluded, and, in fact, the record strongly suggests that the media was not excluded. The media had requested extended media coverage before trial, long before trial, and had been present throughout the proceedings. And there's no indication in the record otherwise, and that is actually a deficiency that we attributed to the defendant because, again, he's asking this court to review his claim for plain error. We also know that the 56-plus members that entered on the first day occupied the entire courtroom. The judge was putting people in the jury box. The judge didn't have enough space. The other component that I'd like to note is that the defendant focuses on the length of the closure, the partial closure, and that it was over two days. But when you calculate the times, and you can tell from the record, jury selection started around noon on the first day. The judge took a break maybe 45 minutes later. Then the jury selection resumed around 2, and then it lasted until about 4.30. So it was 3-1⁄2 hours the first day. And on the second day, when you do the calculation, it lasted about 2-1⁄2 hours. So this is a total of six hours of jury selection over the course of two days and over the course of a 10-day trial. And this is the partial closure. And, again, it's a partial closure. And the reason it's partial is because there were four spectators that were present, two of which the defendant was able to choose who he wanted to be present. And the media wasn't excluded. And the 56-plus members of the veneer panel were there. As the Michigan Supreme Court has noted in Vaughn, the presence of the veneer, and actually as the U.S. Supreme Court explained in Weaver, the presence of the veneer is at least some presence of the public. They are derived from the public. They are members of the public. They can report once they're excused as to what they saw. And that goes to Justice Neville's question about what the public trial right preserves. It preserves the defendant's right to a fair trial. It preserves or ensures that jurors testify or witnesses testify truthfully. It ensures that the participants of the trial do not or act with the neutrality and the seriousness that our justice system requires. And it ensures that those participants don't misbehave. Those are the articulated values that the Sixth Amendment right preserves. And those values were protected here because the public was present. The public could report what happened. The people that the defendant had present could report or say to counsel things that they saw as counsel was saying, looking at the veneer members, seeing if there were people they knew, the reactions that they had, there were people present to serve that function. Turning then to the standard, this court in Fallister explained that the presence of the public, and especially the press, in and of itself, makes it so that the trial is not closed. Those are the words the court used. The trial was not closed. And that is the same thing that happened here because the trial was enclosed. There were spectators present. There's no indication the media was excluded. And for those reasons, the Waller-Stringent standard doesn't apply, and that's what most courts have held with respect to these types of closures. Counsel, are those cases applicable, though they dealt with partial closures permitted under statute, right? So Fallister and Halbeck were under statute, but when we read the rationale of those, of Fallister especially, the court put aside the reasons for the statute and was really looking at were the evils of public trial implicated. And at the outset, the court expressly stated, we think because it wasn't a closure, a total closure, the Waller-Stringent standard doesn't apply. So it clarified that it didn't want courts looking at Halbeck. Or was it rather that the concept of overriding interest was essentially baked into the statute because it served to prevent psychological trauma to minor victims of sex abuse? I think that's the reason for the statute. And so that was the reason the legislature enacted the statute, and so the overriding interest component of Waller may have been satisfied. But the court specifically said that you don't have to do the rest of the factors of Waller. It specifically said the stringent requirements of Waller don't apply in this context. And the reasons the court offered apply equally here. We have the court said that the presence of the media is the presence of the public. Here we have spectators present. This isn't a situation where the court didn't recognize this was a public proceeding and simply closed the courtroom. In Presley, for example, the defendant actually lodged an objection and asked for accommodations, and the judge there flatly refused to consider any alternatives. Here the defendant did not lodge an objection. The trial court took a look at the courtroom, noticed that there were at least about 20 people there. We don't know how many more. We don't know what the space limitations were. Took a look, said there's people for defendant, there's people for the victim. They had been there throughout the trial, so the judge was well aware of who was present and chose a reasonable alternative to total closure, which is all that Presley requires. Presley does not stand for the proposition that every closure, no matter its degree, no matter its duration, no matter its impact, is subject to one Waller or two prohibited altogether. Can I ask another question there? Yes. In the Weaver case in the United States Supreme Court, the court talks about the idea of a timely objection and how that changes the analysis that had, for example, in this situation, if it had been an objection, the trial court could have adjusted whatever orders he had or whatever. There was no input from anyone. The judge was trying to manage this situation. But I have a more specific question about the analysis here. The cases, a number of the cases that we're looking at, Presley, Weaver, et cetera, are federal cases, of course, from the United States Supreme Court. And they approach this problem of where there's no objection in their own jurisprudence talking about structural error. And certainly in Illinois, we have not embraced all of the jurisprudence of the federal courts in terms of structural error. We talk about it in our own context of plain error. Would you agree that's the language we should be using here? Yes, it's the plain error standard. In discussing whether this qualifies as second-pronged plain error, I think the rationale of Weaver, which addresses this in the context of a Strickland claim, is dispositive because it's the nature of the right that is issued, that it's at issue under the second prong, and whether the right or the violation of that right is so serious that it renders the defendant's trial fundamentally unfair. That is the second prong of the plain error standard. That is the question that the Supreme Court addressed in Weaver in the context of Strickland. And it's precisely the question that the Court answered. The Court said that the nature of this right, the importance of this right, while it may be structural, when it is preserved, when there is a record made, when the trial court has an opportunity to correct it, in those circumstances, when there is error, it is automatically reversible. This right, however, is important not because it always renders the defendant's trial fundamentally unfair, but because it protects other values, including those of the media and of the public or other interests. It also is a difficult error to assess the impact on the outcome of defendant's actual trial, so on the outcome of guilt. And so for those two reasons, the Court has said, we will say it's structural when preserved, when the trial judge has an opportunity to make all of the findings or to know what defendant's objections are and to correct any record. But in the absence of that, if the defendant doesn't preserve it and then raises it in the context of ineffective assistance and proves deficient performance, he still is required to show that in his case, the trial rendered his trial fundamentally unfair. The question in Weaver was whether a defendant raising a public trial violation as part of an ineffective assistance counsel claim, as you've already indicated, was on collateral review. And the question was that they must demonstrate prejudice is where you're going. But does that have an application where the public trial violation is being raised on direct review? We think it does here because of how this Court has defined the second prong plain error component to the plain error test. And the second prong, this Court said in Heron multiple times, encompasses errors that are, quote, presumptively prejudicial. And they're presumptively prejudicial because they always render a defendant's trial fundamentally unfair due to the magnitude of the error. That is the same question that Weaver answered. Weaver expressly said that this type of error is not presumptively prejudicial when it's not preserved for trial. So the actual analysis of the second prong of the plain error test is the same as the analysis that Weaver conducted. And the reason Weaver is so important is because the Supreme Court is telling us what the nature of the Sixth Amendment right is. And the nature of the Sixth Amendment right is that it doesn't always render a trial fundamentally unfair. Weaver is explaining why it is structural, and it's saying it's not because it always renders a trial fundamentally unfair. This Court's jurisprudence lines up because the second prong plain error test is expressly about whether an error renders a trial fundamentally unfair in every instance. And so Weaver, we think, is dispositive on the second issue because, absent of showing that the defendant's trial was fundamentally unfair, then you can't get relief from the second prong plain error test. And I'd like to note that the defendant's position is... Haven't we held, though, in the past that prejudice to the defendant in second prong plain error is presumed? Well, the Court has said that prejudice is presumed when there are structural errors. But, again, we're talking about this very specific structural error. And in those cases, they were decided before Weaver. And we did not know that the U.S. Supreme Court was going to say and explain this right. And the universe of cases before the Court here are those that revolve around the Sixth Amendment. And the Sixth Amendment right has been explained by the U.S. Supreme Court. And they have said and explained the right. And they've explained that it doesn't always render a trial fundamentally unfair. That is in line with what most courts have done. The majority of courts enforce forfeitures, saying that you don't automatically get reversal. And, in fact, the majority of courts find that the failure to object in the trial court amounts to a waiver. We're not asking the court to go that far. We have a plain error doctrine in Illinois. When a defendant doesn't object, we will say he's forfeited and review the error. But the bigger question is, so the problem here is that defendant is asking for a windfall. He didn't object, didn't provide the trial court an opportunity to correct, or he didn't tell the trial court that he had a problem with the reasonable alternatives that the trial court chose. This isn't Presley, where the trial court flatly rejected any defendant's request to accommodate. Here, the trial court gave a reasonable alternative, and defendant said nothing. And then he's faulting the trial court for not explaining everything, putting everything on the record, even though it explained its reasons, and then coming to this court and saying, I didn't need to object. I didn't need to do anything. The trial court made some errors on the record because it didn't follow Waller's stringent test. And then it is automatic reversal. Waller expressly states itself that the remedy for a violation of the public trial right should be proportionate to the actual case, or so the actual violation expressly says that we don't want to give windfalls to defendants because it is not in the public interest. That is what Waller says. Waller also notes in footnote 2 that the state is entitled to enforce its procedural defaults of this right. So when a defendant doesn't object or when the defendant waives, the states are entitled to enforce this. None of the U.S. Supreme Court cases say that a state like Illinois can't enforce a forfeiture, and we're asking the court to do so here because the Sixth Amendment values were preserved. There has been no prejudice shown. In fact, the defendant doesn't even argue that there was any prejudice to his case. He argues that maybe there might have been some people that wanted to be there and that couldn't have been there. That might be true, but the Sixth Amendment right to public trial, as the U.S. Supreme Court has said, preserves the values that it preserves are ensuring openness and fairness and allowing people to be there because we want to discourage perjury, because we want to make sure everyone acts with the seriousness required of our justice system. And the defendant hasn't argued that any of those values were undermined. And so this court should likewise hold, as most courts have held, that this right can be forfeited and should enforce the forfeiture. I did want to turn to one minute, Your Honor, if you don't mind. I wanted to turn quickly to what Presley said about overriding interests. Defendant says that Presley said that space limitations can never be a compelling interest or an overriding interest, but Presley doesn't say that. And in fact, the discussion of Presley regarding overriding interests was expressly dicta. The court did not address that second error. The court said it might be, there might be some merit to this regarding whether jury contamination might serve as a rationale for excluding the entire public. But Presley didn't actually address it and specifically said it was declining to address it. I also just wanted to discuss quickly about the Presley's list, the three alternatives that Presley offered. It wasn't an exhaustive list, but they were met in this case, Your Honor. Presley offered three alternatives, reserving space for spectators, dividing the jury panel to reduce congestion, and providing jury instructions to avoid jury interaction with spectators. Here, the court reserved space for four individuals to remain and didn't fire the press. It divided the 118 jury person panel into two days and it directed the spectators that were present to sit in the back and not to engage with the other jurors. So we ask the court to affirm the trial court's judgment on both claims. We'll rest on our briefs on the jury instruction claim unless the court has any questions on that issue or any questions on the public trial issue. Thank you, Your Honor. So we ask the court to affirm the judgment. So the state does not disagree with the facts that I put in this opening brief? In any event, that doesn't matter. I disagree with the state's new interpretation of the facts. However, it doesn't matter because under the state's position, either way, the courtroom was filled. The judge even mentioned that there was a lot of space after they brought in the veneer. So there's no question that the whole courtroom was filled with potential jurors except for those four seats. Seats became available as the proceedings went on, which is obviously foreseeable. That's something that, what President said is divide the veneer panel to reduce congestion is a reasonable alternative. That obviously didn't occur here. If the entire veneer is filling up the whole courtroom, reserving space for the public would involve preserving at least half the courtroom for the public. That did not happen here. The state attempts to reduce the values of the public file right to four. And it's pretty offensive to the water court saying that that's what it says. That's absolutely not what Waller says. Waller does not say that there's only four rights, four values to a public trial right. The Supreme Court repeatedly talked about the value of openness as being intangible. In fact, I believe in Waller or Presley, it actually said that the benefits to a public trial violation are intangible. They're immeasurable. You cannot reduce them to just these four things. Just because it enumerated four things that are valuable about the public trial right does not mean they excluded everything else, as this is not a fourth right to a public trial. And the state's suggestion that a defendant would have to show presence would really undermine our entire second-point analysis with respect to all sorts of different structural errors. The right to self-representation is a structural error. The right to counsel of choice is a structural error under Illinois law. That's a violation. There can be racial discrimination in the selection of a grand jury. I'm sorry. I find this interesting how we put this problem, this issue, into the boxes we already have. Let's take denial of counsel. That's kind of a black or white issue. Read the record and the judge says, I deny your request for counsel. You spoke earlier that the discretion that the court has in dealing with an issue such as this is somewhat this flexibility, that the court can weigh all sorts of concerns, safety, et cetera, and try to fashion the best result. Right? I mean, you kind of agree with that. There's some flexibility in this. And if there's flexibility, can we really say it's a plain error that is so clear, such as the denial of counsel, that therefore there's an automatic reversal? The flexibility comes from the application of the overriding interest test itself. So the judge has no flexibility as far as the judge has to comply with every one of those four parts of that test. And the first part is that there be an important enough reason for the closure. Even that was not met because it's not an important enough reason to bring the entire veneer into the courtroom at the same time and exclude members of the public. That was essentially what the court addressed. Presently, the Evans Court is a well-reasoned decision that also addressed that issue. It's not an important enough reason. You can divide the jury. The state has offered no reason that the jury panel cannot be divided in this case. What is the reason that we would be affected by dividing the veneer into small groups and reserving half the courtroom to the public? So I think, to answer your question, the judge has some discretion with respect to parts of the four-part process, but must comply with every single part. Here, the judge did not comply with even one single part of that test. There wasn't a good enough reason. The closure is broader than necessary. The judge did not consider reasonable alternatives alternative to the Supreme Court's set of reasons. The judge did not make findings adequate to support the closure. Typically, you need a judge to explain why four people. If it's an arbitrary number, an arbitrary four, that's not good enough. There needs to be a specific explanation in the record showing why all those four steps are satisfied. The state seems to ignore that even under its substantial reason test, three of these parts of the test are the same. The case law that it cites says it completely ignores that and just suggests that, oh, you can just basically do the narrowly tabular analysis without even having an important reason for the closure. Basically, the state's argument would limit the attendance of jury selection to actually zero members of the public, because it says that members of Veneer, people who are required to be present during jury selection, count as members of the public. If that's the case, then we have a ballast for actually a public trial, and I know that completely. Only the people who are required to be there have to be there under the state's version of this. Even if the state were to ease up on that and say, okay, one person in addition to the Veneer, still, that's the entire right to a public trial. And if that is justified, the defendant could object all they want, and the court could say, your right to a public trial is satisfied. There's one person here. And according to the state, potentially a newspaper that may not be looking for the same things that supporters of the defendant would be looking for is not a good proxy for interested persons at all, for the reasons that I've already discussed. That does not create a public trial. The openness of the proceeding, compliance with the four-part test is what satisfies the right to a public trial. Not just saying, there's one member of the public there, who apparently the judge could probably choose, and that stands it for everybody, and now you've had a public trial. That's absurd. That's absurd. So the consequences of the state's argument would not only severely erode the important, cherished right to a public trial, undermine our freedoms, reduce the right to people to attend court proceedings to a triviality. That could be whether they're supporters of one side, or they're students or researchers wanting to learn about the court process. These people have no right. They're kind of just trivial. It's a triviality. They come there. They take their time to show up. Nothing. You have no right to do that, because the right to the public to attend is no broader than the right of the defendants to have a public trial. In terms of fundamental unfairness, the U.S. Supreme Court talked about it in Gonzalo Lopez, that not every structural error in a trial is fundamentally unfair. This court was aware of that case, cited that case, and that before it subsequently said that structural errors still require automatic reversal when raised under the second prong of the MLA's plain error rule on direct appeal. And, as Justice Tice pointed out, Weber is a federal case. This court has its own forfeiture rules. It should apply the second prong of the plain error to this case to protect the integrity of the judicial process. Otherwise, defendants who lost the right to a public trial solely due to their counsel's deficient performance could do nothing about it. Members of the public who were excluded could do nothing about it. That would be a fundamental injustice, and that should not be decided. If I could briefly comment on the second jury instruction issue. The state concedes that willfully has been interpreted by judges to mean less than normal, to mean recklessly or voluntarily. So, it was clearly there. The IPI committee said it should be given. The user instructions suggest it should be given. It's logical that it should be, to define that willfully means knowing. Because if it's not done, the risk is illustrated well in this case. This was clearly a close case. It's a mental state. If you look at the transcripts that I attached to my brief, that's issue two, you can see that the prosecutor and the judge saw that this was a close case. It's a mental state. They saw the evidence. They recognized that it was. That also provides an alternative reason for this court to rehearse. And in terms of going back to the public trial issue, if the state is going to reduce, require a showing of prejudice now, then I submit that that has been met under the closely balanced prong of the plein air rule in this case. And I acknowledge I have not raised that before. I couldn't have really raised it in the appellate court because it would not have made much sense, since this court has always said that a structural error is automatic reversal. And I think this court should reach using sexualized supervisory authority if it decides that second prong of plein air, now you need a showing of prejudice. If you look back at the subbie, that's a situation where if you have to show prejudice under the plein air doctrine, you look at whether the case is closely balanced. We have competing expert testimony. The defense expert testimony showed that the defendant was innocent. There's no doubt the case is closely balanced, both for that reason and for the reasons that I've argued in issue two of my brief as to the jury instruction. So this court should reverse Tavares' conviction, regardless of whether it finds the second prong of plein air. So with that, I would ask the court to reverse its conviction and revamp the state's decide whether to retry for the tolerance of the charges. Thank you. Case number 1, 2, 3, 9, 7, 5, People of the State of Illinois v. Tavares-Bradford will be taken under advisement as agenda number nine. Counsels Burrell and Kashuk, thank you very much for your arguments this morning.